# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBERT H. GATTI, SR., ET AL.**        **CIVIL ACTION**

**VERSUS**        **NUMBER 10-329-JJB-DLD**

**THE STATE OF LOUISIANA, ET AL.**

## MAGISTRATE JUDGE'S REPORT

This class action lawsuit, which was removed from state court under the Class Action Fairness Act (CAFA)[1], is before the court on referral from the district judge of one motion to remand filed by plaintiffs (rec. doc. 56), and on four motions filed by the defendants: a motion to remand filed by defendant State of Louisiana (rec. doc. 57) and three essentially duplicate motions to abstain pursuant to the Burford abstention doctrine filed by the removing defendant Chesapeake Operating, Inc. (Chesapeake) and various other defendants, all of whom basically adopted the positions of Chesapeake (rec. docs. 58, 59, 60).

Thus, as a result of the expansion of diversity jurisdiction under CAFA, the court has before it the unusual situation of a purely state law civil action involving the unitization of natural gas fields being removed to federal court where all defendants agree the case cannot go forward. Defendant State of Louisiana did not consent to removal or jurisdiction and immediately filed a motion to remand, and the removing defendant, immediately upon landing in a federal forum, urged the federal court to abstain from exercising its jurisdiction over the entire case by remanding one claim and staying another. Oral argument was held

---

[1] 28 U.S.C. §§1332(d)(2) and 1453(b).

on November 16, 2010, primarily for the parties to explain the procedural context of the case, especially in relationship to the Commissioner of Conservation, and the likely path that would be necessary for the case to proceed in state and/or federal court. The parties filed post-hearing briefs. (Rec. docs. 92-93)[2]

## Background

The backdrop of this litigation lies in a gas rich area of northwest Louisiana known generally as the Haynesville Shale Zone. Plaintiffs are the owners of mineral rights (other than mineral leaseholds) in the Haynesville Shale; and defendants are the State of Louisiana through the Department of Conservation, James H. Welch, (State) and numerous "operating defendants" of the Haynesville Shale, including Chesapeake Operating, Inc. (Chesapeake), J-W Operating, Encana Oil & Gas (USA), Inc., Exco Operating, LP, JAG Operating, LLC, Conoco Phillips Company, Petrohawk Operating Company, SWEPI LP, Comstock Oil & Gas-Louisiana, LLC, EOG Resources, QEP Energy Company, Forest Oil Permian Corporation, Beusa Energy, Inc., Ark-La-Tex Energy, LLC, El Paso E & P Company, LP, Goodrich Petroleum Company, LLC,  XTO Energy, Inc., and Coronado Energy E & P Company, LLC.

On April 8, 2010, plaintiffs filed a class action on behalf of themselves and the 50,000 putative members of the class who allegedly sustained damages as the result of actions taken by the State and by the operator defendants.   Plaintiffs generally contend that the Commissioner of Conservation has violated Louisiana law by establishing and maintaining 640 acre drilling units in the Haynesville Shale Zone, and that the units should be much

---

[2] CAFA allows for minimal diversity, and does not require the consent of all defendants for removal; hence the non-consenting State defendant's predicament. 28 U.S.C. §§1332(d)(2) and 1453(b).

smaller and reflect the actual area that can be drained by one well.[3]  They also object to the Commissioner's grant of permits for "alternate unit wells" within existing units.  They want a declaration[4] that the Commissioner's prior orders establishing these units are null and void, that certain acts are beyond the authority of the Commissioner; and they want damages from the various operating defendants for failing to comply with orders of the Commissioner to provide information that would have or should have resulted in establishing and/or revising units to comply with statutory standards.

Plaintiffs specifically mention Chesapeake's history in the Haynesville Shale Zone as indicative of the problem.  According to plaintiffs, Chesapeake drilled the first well in the

---

[3]  Plaintiffs explain that Louisiana law grants the Commissioner of Conservation (Commissioner) the authority to "regulate the spacing of wells and establish drilling units, including temporary or tentative spacing rules and drilling units in new fields" (rec. doc 1-1, citing La. R.S. 30:4 C(13)).  Louisiana law defines a "drilling unit" as "the maximum area which may be efficiently and economically drained by one well" (Id., citing La. R.S. 30:9 B).

[4]  Plaintiffs seek a declaratory judgment against the State as follows:

    (A)    That only a few exceptions exist to the statutory requirement that a drilling unit is the maximum area which may be efficiently and economically drained by *one* well.  The first exception is Act 441 of 1960, La. R.S. 30:5 (C) regarding *secondary recovery operations in poolwide units*, where a certain percentage of interested parties agree to a poolwide unit allowing for the drilling of more than one well.  The second exception is Act 1094 of 1999, La. R.S. 30:5.1 regarding deep wells where the geologic top is encountered in the initial well *in excess of 15,000 feet true vertical depth*.  The Commissioner under those circumstances can establish a single unit served by one or more wells.  The third exception is Act 892 of 2004, La. R.S. 30:5.2 where to encourage the development of *coal seam natural gas* the Commissioner of Conservation was authorized to establish a single unit to be served by one or more wells for a coal seam natural gas producing area.  Therefore, except for the above statutory exceptions no authority or power is *prescribed by law* for the Commissioner to establish a unit having an area in excess of the area drainable by one well and the creation of a unit having an area in excess of the area drainable by one well is null and void.

    (B)    That "alternate unit wells" having the meaning and effect attributed by the Commissioner are not authorized by statute, not granted to him by the legislature, and absent the grant of authority by the legislature are beyond the legal authority of the Commissioner and violate the specific provisions of La. R.S. 30:9 B.

(rec. doc. 1-1).

area, which was a vertically drilled well and designated as the "unit well," with Chesapeake as the unit operator of a 640 acre unit. Because the unit well could drain only a small area due to the low porosity and permeability of the shale, Chesapeake applied for and was granted a permit to drill an alternate horizontally drilled unit well, and then another alternate horizontally drilled unit well on the same 640 acre unit. Plaintiffs contend that the geology combined with the available engineering technology utilized in the Haynesville Shale clearly shows that one well drains about 80 acres, and that it would take eight wells, not one or even three, to drain a 640 acre unit.

Plaintiffs allege in their petition that Chesapeake and the other operating defendants in the Haynesville Shale Zone were aware that the horizontally drilled wells drained a limited portion of the reservoir underlying a surface area of about 80 acres and that they were under a continuing duty to comply with the Commissioner's orders, such as the one set out below in Conservation Order No. 994-D, to provide information needed by the Commissioner in order to ensure that unit boundaries are and remain appropriate:

> When there is obtained additional geographic, engineering or other appropriate information which would indicate a required change or revision of the unit boundaries as adopted herein, or which would indicate a required change or revision of other provisions of this Order, the party or parties in possession of such additional information shall petition the Commissioner of Conservation for a public hearing for the purpose of considering appropriate changes.

Rec. doc. 1-1, p.10, para.17.

Plaintiffs further contend in their petition that despite these orders and the operators' duty to protect the rights of plaintiffs, "instead of applying for a unit limited to the small drainage area of [the unit well] . . . Chesapeake . . . applied for a permit to drill an 'alternate

unit well,' . . . thus seeking a clearly forbidden two-well unit."[5]  This pattern allegedly was

repeated by other operators in the Haynesville Shale Zone; thus plaintiffs conclude in

paragraph 19 of their petition that "at all relevant times" the operators

> were well aware . . . that approximately ***eight wells, not one,*** would be
> required to drain the 640 acre [units]. . . . Nevertheless, despite the
> enormous damage sustained from the resulting inequities, operators
> continued to apply for and the Commissioner continued to order 640 acre
> units in clear violation of the statutory standard, and no revision of the units
> have occurred to meet the statutory requirement of a one-well unit nor have
> they been ordered or applied for. . . .[6]

As the result of these alleged actions, plaintiffs seek to establish two subclasses of plaintiffs

who suffered damages:

> *Subclass A* - plaintiffs owning mineral rights within the true drainage area of the unit
> well who suffered a dilution of their share of unit well production;
>
> *Subclass B* - plaintiffs owning mineral rights to lands outside of the drainage area
> whose title is clouded by the apparent maintenance of a lease otherwise expired, in
> whole or in part thus precluding the member from realizing the market value of the
> member's lease rights.

Rec. doc. 1-1, p.11, para. 21.

Shortly after service of the petition, defendant Chesapeake removed this matter to

federal court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §§1332 (d)(2)

---

[5]  Rec. doc. 1-1, p.9, para.15

[6]  Rec. doc.1-1, p.11, para. 19 (emphasis in original) The petition does not specifically seek new unit boundaries nor does it explain the basis of damages that would result from a finding only that prior orders exceeded the authority of the Commissioner and thus were null and void. Some defendants suggested that the most likely procedural path, assuming the plaintiffs made it past preliminary motions and secured a declaratory judgment, would be for them to go back to the Commissioner for the presentation of additional evidence, after which new orders would be issued.  Depending upon the contents of those new orders, plaintiffs would then attempt to recover damages from the operators.  As Chesapeake noted, however, the only case before this court is the one seeking a declaration that the orders are null and void and a damages action based on what the Commissioner would have and should have done had he been in possession of all information.  The defendants were uniform in their assessment that the plaintiffs' requests for relief against the operators are dependent first upon undoing prior orders of the Commissioner.

and 1453(b). Defendant alleges facts in the notice of removal, which are uncontested, that the CAFA requirements of minimal diversity and amount in controversy are satisfied.[7] Defendant further states in the notice of removal that while it seeks to remove the entire action, it nevertheless reserves its right to seek bifurcation and remand of the declaratory judgment claim against the State, which must be resolved in state court. Plaintiffs and the defendant State filed separate motions to remand (rec. docs. 56 and 57). Various operator defendants filed motions to abstain based on the Burford doctrine (rec. docs. 58, 59, 60).

Based on the representations made in their briefs and at oral argument, it is clear that all parties agree, based on one theory or another, that plaintiffs' request for declaratory relief regarding the authority of the Commissioner of Conservation and the validity of his orders must be remanded to state court. All parties also agree that the current claims against the operator defendants will be moot if the declaratory judgment action against the State fails. What is disputed is whether the remaining claims against the operator defendants should be stayed or remanded along with the declaratory judgment action.

**Arguments of the Parties**

Neither the plaintiffs nor the State challenge defendant Chesapeake's removal under CAFA insofar as the requirements of minimal diversity and amount in controversy are concerned.[8] Rather, both plaintiffs and the State argue that this entire matter should be remanded because it falls under one of the exceptions to CAFA. Specifically, plaintiffs

---

[7] CAFA requires minimal diversity and more than $5,000,000 amount in controversy. See 28 U.S.C. §1332(d)(2). Section 1332(d)(6) provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

[8] The State initially challenged diversity, but dropped that position in light of CAFA's minimal diversity provision.

argue that this matter falls under the "local controversy exception" set forth in 28 U.S.C. §1332(d)(4)(A)[9], and the State argues that this matter falls under the "State as the primary defendant" exception set forth in 28 U.S.C. §1332 (d)(5).   The State also pointed out that regardless of CAFA, it is immune from suit in federal court because it has not waived its sovereign immunity.

Furthermore, both plaintiffs and the State disagree with defendants' interpretation of the Burford abstention doctrine,  insofar as it would result in a bifurcation and stay of the damages action, and argue instead that even under the application of the Burford abstention doctrine, remand of the entire action is appropriate.  Many of the same reasons the State used in support of its position that it is the primary defendant apply equally to reasons to abstain by remanding the entire action.  The State contends that plaintiffs claim that "their harm is a direct result of actions taken by the Commissioner of Conservation." (Rec doc 56-1, p.6) Both plaintiffs and the State contend that the action against the State is the crux of the entire case, all the claims are inextricably intertwined, and parallel actions would result in duplication and possible conflicting factual and legal findings.  Every party ultimately agreed, however, that if the court decides to bifurcate the claims rather than remand the entire action, the remaining claims against the operator defendants should be

---

[9]In support of the local controversy exception, plaintiffs argue that  (1) greater than 2/3 of the putative plaintiffs are citizens of Louisiana; (2) at least one defendant is a defendant from whom significant relief is sought by members of the plaintiff class, whose conduct forms a significant basis for the claims asserted by the proposed plaintiff class, and who is a citizen of Louisiana; (3) injuries resulting from the conduct were incurred in Louisiana; and (4) no other class action has been filed asserting the same or similar factual allegations against any of the defendants during the 3-year period preceding the filing of the class action.  The plaintiffs presented evidence going to the *residency or mailing addresses* of a large number (but less than 2/3) of putative class members and of a Louisiana domicile of at least one defendant.  Although the court did not reach this issue, for the reasons stated by the defendants in their opposition, the court notes that neither residency alone nor a mailing address is the equivalence of citizenship, especially where it is not unusual for the ownership of mineral rights to be separated from ownership of the land and to be held by individuals as well as entities whose citizenship lies outside of Louisiana.

stayed.  The State did not ask that the operator defendants be returned to state court with it in the event of bifurcation, but both plaintiffs and the operators argue that all parties should be part of the declaratory judgment action in state court – not just the State and plaintiffs.

Defendants deny that any of the exceptions under CAFA apply to this matter. Defendants contend that plaintiffs failed to prove that 2/3 of the plaintiff class are citizens of Louisiana and that  "significant relief" is sought from a defendant who is a citizen of Louisiana, as required by Section 1332(d)(4)(A).  Furthermore, defendants contend that the State failed to prove that *all* of the primary defendants are the State or State defendants, as required by Section 1332(d)(5).   Defendants agree, however, that the declaratory judgment action against the State should be remanded and that it cannot be heard by the federal court, albeit their professed reason, at least initially, seemed to lie in  Burford abstention as opposed to sovereign immunity.[10]   While the operator defendants include themselves in the declaratory judgment action against the State and seek to be remanded along with the State to participate in the declaratory judgment action against the Commissioner, the  operator defendants simultaneously want to remain in federal court for the damages claim, which, they contend, should be immediately stayed under the Burford abstention doctrine.

---

[10]  Several groups of defendants filed separate oppositions to the motions to remand raising similar arguments.  (See rec. docs. 67, 68, 70, 79, 81). The defendants seem to argue abstention only, but do not contest sovereign immunity.  This, however,  is not a case of applying abstention factors to the claim against the State to decide whether or not to abstain.  There is no option of exercising jurisdiction  where the State validly asserts its sovereign immunity to suit in federal court on purely state law claims.  Sovereign immunity under the Eleventh Amendment operates to protect States from private lawsuits in federal court unless the state consents or Congress has clearly and validly abrogated the state's sovereign immunity. U.S. Const. Amdmt. XI; *Col. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).  Sovereign immunity deprives federal courts of subject matter jurisdiction over the claims. *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196 (5th Cir. 2009). Regardless, everyone agrees that the claims against the State do not belong in federal court, and no one ultimately contested the State's immunity under the Eleventh Amendment.

## Applicable Law

Defendant Chesapeake removed this action under CAFA, which provides for removal of class actions involving parties with minimal diversity where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  See 28 U.S.C. §1332(d)(2); *Frazier v. Pioneer* Americas, L.L.C., 455 F.3d 542, 545 (5th Cir. 2006).  One of the reasons given for CAFA's enactment was "to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub.L No. 109-2, § 2(b)(2), 119 Stat.4,5 (codified as a note to 28 U.S.C. § 1711.  Historically, these cases often were precluded from being brought or removed to federal court because one party, often a nominal party, was non-diverse.  With the change to allow minimal diversity as a gateway consideration, these formerly non-removable cases now may seek a federal forum.

Merely having the two initial requirements of minimal diversity and amount in controversy, however, is not sufficient to sustain jurisdiction under CAFA under certain circumstances.  Other provisions must be considered.  Just how these additional provisions are applied and what they are called has been the subject of some debate.[11]  The Fifth

---

[11]  In *Corsino v. Perkins*, 2010 WL 317418 (C.D. Cal.), the court quoted from *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) to state its position: "As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' §1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2);id. at 1021 n.3 ("The Fifth Circuit characterized §1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2) . . . .) We view § 1332(d)(5) somewhat differently. . . .[S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under  § 1332 (d)(2).  This distinction is important because, as we address later, there are
(continued...)

Circuit, however, refers to these provisions or limitations on the court's exercise of jurisdiction under CAFA as "exceptions"; thus this court must likewise treat them as exceptions.  See 28 U.S.C. §1332(d)(3)-(5); *Frazier v. Pioneer* Americas, L.L.C., 455 F.3d 542, 545 (5th Cir. 2006).  There are several exceptions to federal jurisdiction under CAFA, which, if applicable,  result in the court's not exercising  jurisdiction over a particular class action.  Plaintiffs argue the applicability of the "local controversy exception," 28 U.S.C. § 1332(d)(4), and the State argues the applicability of the "State as a primary defendant exception," which states that the provisions of minimal diversity and amount in controversy

   shall not apply to any class action in which--

   (A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.

Each movant (plaintiffs and the State) has the burden of proving the applicability of the particular exception to CAFA raised in its own motion.  *Frazier v. Pioneer Americas, LLC*, 455 F.3d 542 at 546.

---

[11](...continued)
'exceptions' to the statute in which jurisdiction otherwise exists under § 1332 (d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction.  See, e.g., § 1332(d)(3)-(4).

   See also Vance, Sarah S., A Primer on the Class Action Fairness Act of 2005, 80 Tul.L.Rev.1617, 1621-22, where she discussed § 1332(d)(5) in a separate category as an "exclusion" from CAFA jurisdiction and  § 1332(d)(3)-(4) as "exceptions" where CAFA jurisdiction otherwise exists, but the court must or may decline to exercise jurisdiction.  "The jurisdiction-expanding provision of CAFA simply does not apply [to §1332(d)(5)]."  *Id.*at 1622.

The introductory phrases to  sections 1332(d)(3)-(4) and 1332(d)(5) likewise reflect differences.  For example § 1332(d)(4), the "local controversy exception," provides that "[a] district court shall decline to exercise jurisdiction under paragraph (2) . . .," whereas §1332(d)(5)], provides that "[p]aragraphs (2) through (4) shall not apply to any class action in which [the State is the primary defendant] ." ("Paragraphs (2) through (4)" set out the minimal diversity and amount in controversy requirements.)

The court thus begins with the exceptions, for if an exception applies, the federal court is precluded from the exercise of jurisdiction over this matter. If the court determines that it has jurisdiction over this matter based on CAFA and none of the exceptions apply, it must then consider whether an abstention doctrine, especially Burford abstention, requires the court either to retain and stay the claims against the operator defendants or to remand those claims to state court along with the declaratory judgment action.[12]

## Discussion

Defendant Chesapeake alleges in its notice of removal that minimal diversity is satisfied because plaintiff Robert H. Gatti, Sr., is a citizen of Louisiana and defendant Chesapeake is an Oklahoma corporation with its principal place of business in Oklahoma (rec. doc. 1). Defendant also sets forth specific facts to prove that based on the size of the putative class (50,000) and the damages sought, the amount in controversy exceeds $5,000,000. Id. None of the parties have challenged these jurisdictional prerequisites for removal under CAFA, and the court is satisfied based on a review of the petition and notice of removal that defendant has met its burden of proving both minimal diversity and amount in controversy. It next turns to the exceptions.

---

[12]  The Burford abstention doctrine permits a federal court to abstain from exercising jurisdiction in deference to complex state administrative procedures. *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d 697, 703, n.12 (5th cir. 1999); *Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). A federal court generally cannot dismiss or remand a case based on the Burford abstention doctrine where the plaintiff asserts only a claim for damages. *Quackenbush v. Allstate Ins. Co.,* 517 US. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). A claim for damages, however, may be stayed pending resolution in state court of an issue relevant to the federal case if the Burford doctrine calls for abstention. *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d 697, 703, n.12 (5th Cir. 1999). Of course, a claim may not be just a "damage" claim if it, too, requires resolution of an issue that would otherwise require deference to "complex state administrative procedures." The instant matter does not fit neatly into theories developed in prior jurisprudence on abstention because those cases arose under typical diversity and federal question jurisdiction. This case could not have been removed or filed in federal court prior to CAFA. The presence of the State and Louisiana operator defendants would have precluded diversity jurisdiction and there is no federal question involved.

**<u>The State's Motion to Remand : The State as the primary defendant</u>**

In addition to arguing that it should be immune from suit under the doctrine of sovereign immunity, the State argues this matter falls under the "State as the primary defendant" exception to CAFA; therefore, the court should remand the entire case to state court.  The law in the Fifth Circuit is clear that in order for  "State as the primary defendant" exception to apply, *all* "primary defendants" must be the "State, state officials, or other governmental entities against whom the district court is foreclosed from ordering relief." *Frazier,* 455 F.3d 542 at 546-547 (5th Cir. 2006).

The term "primary defendant," however, is not defined in CAFA and there is no universally accepted term of art that can be easily applied with corresponding examples to turn to for guidance.   The earliest attempt at a gloss of the term is contained in the Senate Report, which was issued ten days after CAFA's enactment:

> For purposes of class actions that are subject to subsections 1332(d)(3) and (d)(5)(A), the Committee intends that "primary defendants" be interpreted to reach those defendants who are the real "targets" of the lawsuit–i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, *particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).*

S. Rep. No. 109-14, at 43-44 (2005); <u>*see* *also*</u> *Frazier*, 455 F.3d at 546. (Emphasis added.)

Judge Vance early on made the commonsense observation in her article, *A Primer on the Class Action Fairness Act of 2005*, 80 Tul.L.Rev 1617, 1623, that "[t]he determination of who is a primary defendant will likely involve the analysis of state substantive law to determine who can be liable and to what extent under plaintiffs' theories of liability."   This theme generally has repeated itself in the developing jurisprudence, albeit

phrased differently. In an attempt to articulate the factors to consider in determining who is a primary defendant, many courts have cited the five factors listed in *Sorrentino v. ASN Roosevelt Center*, LLC, 588 F. Supp. 2d 350,359 (E.D.N.Y. 2008) (internal cites omitted):

> A primary defendant is one (1) who has the greater liability exposure; (2) is the most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action.

The *Sorrentino* court examined these factors and then looked to see whether "there is a reasonable basis upon which to differentiate [the alleged non-primary defendant] from the [alleged primary defendant]." *Sorrentino*, 588 F.Supp 2d at 359.

Similar observations have been made in varying factual contexts by other courts. For example, courts have interpreted the term "primary defendant" as "one who either is (1) directly liable for a 'main' or 'principal' portion of the relief sought" or (2) "plays a 'main' or 'principal' role in the underlying dispute" (See *Serrano v. 180 Connect, Inc.*, 2006 WL 2348888 (N.D. Cal. 2006)[13]; and as "defendants facing direct liability and exclud[ing] all defendants joined as secondary or third-party defendants for purposes of vicarious liability, indemnification, or contribution;" (See *Passa v. Derderian*, 308 F.Supp.2d 43, 61-64 (D.R.I. 2004).[14] Other sources have suggested defining the term "primary defendant" based on Black's Law Dictionary's definition of "primary liability," which is "liability for which one is directly responsible, as opposed to secondary liability." See Coney, Amanda, *Defining "Primary Defendants" in the Class Action Fairness Act of 2005*, 67 La. L. Rev. 903 (2007),

---

[13] The court in *Serrano v. Connect, Inc.*, analyzed term "primary defendant' as used in the "home state" exception located in Section 1332(d)(4).

[14] The court in *Passa v. Derderian*, 308 F.Supp.2d 43, 61-64 (D.R.I. 2004), interpreted the term "primary defendant" as used in the Multiparty, Multiforum, Trial Jurisdiction Act of 2002.

citing Black's Law Dictionary, 933 (8th ed. 2004).  In contrast, "secondary liability," is defined as  "liability that does not arise unless the primarily liable party fails to honor its obligation." Id.

Thus, clearly, one of the factors to look to in determining who is the primary defendant is the theory of liability posited against the defendants and the claims as they existed at the time of removal.[15]  Where the claims against particular defendants at the time of removal  are weak or unlikely to prevail in federal court as pled, it seems at odds with the concept of "primary defendant" nevertheless to label those defendants as "primary." Here, plaintiffs have said that the reason this action was filed in the Nineteenth Judicial District Court for the State of Louisiana is because they had to file there. Jurisdiction lies nowhere else.  Louisiana law specifically provides that law suits challenging an order issued by the Commissioner shall be brought in one venue - the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. See La. R.S. 30:12;[16] see also *Trahan v. Superior Oil Co.*, 700 F.2d 1004 (5th Cir. 1983).[17] This provision has applied

_____

[15] The court must look to the claims at the moment of removal to determine whether jurisdiction exists. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d720 (5th Cir. 2002); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F3d 256 (5th Cir. 1995).

[16] La. R.S. 30:12 specifically provides that "[s]uit for review shall be instituted in the district court of the parish in which the principal office of the assistant secretary is located . . .".  The principal office of the Commissioner of Conservation/Assistant Secretary, James Welsh, is located in Baton Rouge, Louisiana, which is located in East Baton Rouge Parish.  The 19th Judicial District Court is the district court for East Baton Rouge Parish.  See *Nunez v. Wainoco Oil & Gas Co.*, 488 So.2d 955 (La. 1986)  for a thorough discussion of the policy and principles underlying Louisiana law regarding oil and gas exploration and development.

[17] A person who is aggrieved by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the assistant secretary of the office of conservation hereunder, or by an act done or threatened hereunder, and who has exhausted his administrative remedy, may obtain court review by a suit for injunction or judicial review against the assistant secretary as defendant. See La. R.S. 30:12(A).  A "[s]uit for review shall be instituted in the district court of the parish in which the principal office of the assistant secretary is located and must be brought within sixty days of the administrative action that is the subject of the suit. In cases of judicial review of adjudication proceedings, the sixty days shall begin to run after mailing of notice of the final decision or order, or if a
(continued...)

regardless of how plaintiffs may characterize their action and regardless of whether the Commissioner is named in the suit.  In *Trahan*, the court wrote that Louisiana courts have long forbidden suits between private parties which are, in essence, collateral attacks on the Commissioner's orders: the "rule extends to suits between private parties in which a particular order of the Commissioner is an operative fact upon which the determination of the parties' respective rights directly depends, even though all relief sought can be given, such as by money damages or lease cancellation, without thereby causing any actual violation of the Commissioner's order." *Trahan* at 1016.  In *EOG Resources, Inc. v. Chesapeake Energy Corp.*, 605 F.3d 260, 266, (5th Cir. 2010), the court again noted the collateral attack rule extends "broadly to suits between private parties" where orders issued by the Commissioner constitute an operative fact "upon which the determination of the parties' respective rights directly depends."  The *EOG* court listed several factors to consider in order to determine whether a suit actually challenges an order of the Commissioner as an  "operative fact" and thus must be dismissed:

(1)  Does the plaintiff seek relief that would require the defendant to violate the Commissioner's order?

(2)  Would resolution of the claim require the court to reconsider the Commissioner's factual findings?

(3)  Would the Commissioner have had the authority to grant the relief requested by plaintiff if the claim had been presented at the hearing?

*Id.* at 266 (internal citations omitted)

---

[17](...continued)
rehearing is requested within sixty days after the decision thereon." La. R.S. 30:12(B).

Here, the defendants in oral argument did not disagree that plaintiffs' suit against them, in whole or in part, as pled, constitutes a collateral attack on the Commissioner.[18] The operator defendants could not currently comply with plaintiffs' demands without violating existing orders, nor could this court resolve the claims against the operators without reconsidering the findings already made by the Commissioner. Plaintiffs also claim that the Commissioner would have and should have made the very findings they now seek.

Everyone thus agreed the claims against the operator defendants are, at the very least, premature, albeit for different reasons. Some defendants cited a failure to exhaust administrative remedies; others noted that the claims cannot proceed as pled; all agreed that a failure of the declaratory judgment would moot all claims. Various defendants opined in oral argument that even assuming the plaintiffs prevail in their declaratory judgment action, plaintiffs' claims against the operator defendants would still be subject to dismissal as a collateral attack, assuming they somehow managed to survive prematurity based on failure to exhaust administrative remedies. The plaintiffs naturally disagreed, but they also said they could not have brought the claim here originally, and they agreed that a stay is appropriate if the claims are not remanded.[19] And while the State did not utter the words

_____

[18] The defendants contended in oral argument that the fact that the suit could be subject to dismissal as a collateral attack was a question going to the merits of the claim and not to jurisdiction, which they contend is valid under CAFA because there is minimal diversity and the amount in controversy is satisfied, but they made this argument on the assumption that CAFA jurisdiction otherwise existed and no exception applied, and the only issue to decide was the proper procedural vehicle for the exercise of abstention over the claim – they favored staying the claim and later bringing a motion to dismiss after the declaratory judgment action was either granted or denied. They did not discuss collateral attack in relation to the "State as a primary defendant" issue, and the court did not specifically ask them to do so during oral argument.

[19] The plaintiffs understandably do not agree that their claims against the operator defendants are in whole or in part a collateral attack on the Commissioner. The court, however, must look to what is stated in the petition and the status of those claims as of the time of removal; not hypothetically to what the claims

(continued...)

"collateral attack," it did argue in brief the essence of the foundation for a collateral attack; that is, that the claim against the operators depends on finding that the harm they suffered is a direct result of discretionary actions taken (and not taken) by the Commissioner. Everyone agreed that the Commissioner's findings with regard to unitization and the use of alternate unit wells are the "crux" of the entire case, the "but for" for all claims, "part and parcel" of plaintiffs' claims. Everyone also agreed that the plaintiffs' claims against the operators cannot go forward at this time.[20]

---

[19](...continued)
may evolve into over the years with amendments and after actions commenced and concluded in state court and before the Commissioner of Conservation. Plaintiffs, in contesting collateral attack, carved out of their petition the claim that the operator defendants should have requested that the units be revised, and allege that those claims are not a collateral attack. Perhaps they are depending on a statement in *Trahan* suggesting that a breach of a duty to present new information that would show that unit boundaries should be changed is not a collateral attack; however, *Trahan* also stated that "the collateral attack rule generally prevents inquiry as to whether that particular action of the Commissioner would have been different had the lessee not been guilty of a nonfraudulent failure to fairly present at the hearing all then existent geological and engineering information in its possession." *Trahan* at 1025. Plaintiffs' petition, as written, perhaps attempted to allege both situations. See, *e.g.*, paragraph 18 of plaintiff's petition. Rec. doc. 1-1. Plaintiffs allege the operator defendants knew when they applied for the original 640 acre units that the units could not be drained by one well, yet did not so advise the Commissioner, and, although not as clearly stated, that the requests for alternate unit wells should have been requests for revision of unit boundaries. Plaintiffs also add later that the original 640 acres would not have been an issue had the units been revised. Rec. doc. 1-1. Thus, there are strong arguments to be made, as defendants stated, that plaintiffs' claims against the operator defendants, in whole or in part, *currently* are a collateral attack on the Commissioner's order(s).

[20] As stated earlier, the defendants have insisted all along, even in their notice of removal, that the claims against the operator defendants should not go forward. They insist that the court has jurisdiction over the entire case under CAFA, but that the court should abstain from exercising that jurisdiction under the principles of Burford abstention. Thus, under the defendants' argument, the court has subject matter jurisdiction over the entire case under CAFA, but the application of Burford abstention precludes its exercise of that jurisdiction over the State (treating Sovereign Immunity as a factor of abstention rather than as an absolute bar or as jurisdictional), over the operators (insofar as they should be party to the declaratory judgment action), and over the plaintiffs' claims against the operators (insofar as those claims should be stayed rather than remanded because they seek damages – without discussion of the intertwined issue of having also to decide what the Commissioner *would have or should have* done). The defendants indicated that they would ask the court, once the stay was lifted, to dismiss the claims against the operators, in whole or in part, as a collateral attack. Of course, if the "damage" claim is a collateral attack, then it does not appear to be simply a damage claim. Interesting as these arguments are, the court does not reach them in light of its recommendation with regard to the State as the primary defendant.

As stated earlier, these claims could not have been brought here originally, according to plaintiffs, and they cannot stay here ultimately, according to defendants – all of which indicate that it is the State who is the primary defendant.

Defining "primary defendant" where the State is the primary defendant is rare, probably because States are rarely named as significant, much less primary, defendants in class action lawsuits removed to federal court.  One of the few cases to address the question rejected the corporate defendants' argument that the Commissioner of Insurance was "a bit player in this lawsuit because they [insurers] stand to pay out millions of dollars [while] plaintiff seeks no damages from the Commissioner," but rather seeks only "'clarifications,' acknowledgments' and reformation of policies."  *Hangarter v. The Paul Revere Life Insurance Co*, 2006 WL 213834 (N.D. Cal. 2006).  The court rejected the corporate defendants' arguments, remanded the action under the "State as the primary defendant exception,"  and noted that the Commissioner was the "'but-for cause' of the supposed harm," the only defendant named in one claim and the only defendant against whom all plaintiffs sought relief and thus would be liable not just to a  portion of the class but to the entire class of plaintiffs. Id.

Here, as in *Hangarter*, the Commissioner's actions are the "crux" of the case, the "but-for cause" of the alleged harm, and the Commissioner is the only defendant named in one claim, and the only defendant against whom all plaintiffs have a uniform claim for relief.  All plaintiffs have claims against the State.  All plaintiffs do not have claims against all defendants, however.  Defendants have even submitted evidence to show that the defendants have varying relationships with the plaintiffs.  The operator defendants have different relationships with different plaintiffs, have different interests in the fields,  and the

values and potential liability associated with those relationships vary widely and individually. The only defendant against whom all the liability evidence is pertinent is the State, for it is the State who, according to plaintiffs, *would* have created the units differently and *should* have revised the units based on information that the operators had and did not present to the Commissioner. Indeed, it is the operator defendants themselves who request that they be remanded to state court along with the State in the declaratory judgment action, even though they are not named, because it is the claims against the State and the evidence presented there that will affect the rights of the operator defendants. Not only is the State the only defendant against whom all plaintiffs have made a claim, most, if not all, the claims against the operator defendants are couched in terms that make them, certainly *at this time*, essentially claims against the State.[21]

In summary, as *all* parties have argued, albeit for different reasons, *all* of the factual and legal claims in this alleged class action currently are inextricably intertwined and are wholly dependent upon undoing prior orders of the Commissioner of Conservation based on the breach of Louisiana law both by the Commissioner in exceeding his statutory authority and by the operator defendants in not abiding by orders of the Commissioner to provide technological and geological information that would have caused the Commissioner to issue different orders with regard to the unitization of the Hanesville Shale Zone fields. The State is THE primary defendant because without it, there is no claim that can stand alone at this time and is not dependent upon a finding of what the Commissioner would

---

[21] Under CAFA, the one-year limitation of 28 U.S.C.§1446(b) for defendants to remove a case under diversity jurisdiction  does not apply; thus defendants would not be prohibited from removing the claims against the operators at some later date should they ever become ripe (for example, after many other successful proceedings involving the Commissioner in the state), as long as the defendants remove the case, or what is left of it, within 30 days of its becoming removable. 28 U.S.C. §1453(b).

have or should have done. What the Commissioner would have or should have done is the "but for" element overriding every issue. All else is secondary. As such, this case falls squarely into 28 U.S.C. §1332(d)(5), which clearly states that the CAFA jurisdictional provisions allowing for minimal diversity and amount in controversy "shall not apply to any class action in which--

> (A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. . . ."

Because the court recommends that the "State as the primary defendant" exception to CAFA jurisdiction is applicable, that there is no other basis of subject matter jurisdiction, and that this matter should be remanded, it is unnecessary to reach the other exceptions and/or arguments raised by the parties. Accordingly,

**IT IS RECOMMENDED** that the State's motion to remand (rec. doc. 56) should be **GRANTED**, and this matter **REMANDED** to the 19th Judicial District Court, State of Louisiana.

**IT IS FURTHER RECOMMENDED** that the plaintiff's motion to remand (rec. doc. 57) and defendants' motion to abstain pursuant to the Burford Doctrine (rec. doc. 58), motion to abstain (rec. doc. 59), and motion for joinder with motion to abstain pursuant to the Burford Doctrine (rec. doc. 60) should be **DISMISSED as MOOT.**

Signed in Baton Rouge, Louisiana, on February 25, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ROBERT H. GATTI, SR., ET AL.**          **CIVIL ACTION**

**VERSUS**                               **NUMBER 10-329-JJB-DLD**

**THE STATE OF LOUISIANA, ET AL.**

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 25, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**